Commonwealth of Puerto Rico, etc., Plaintiff and Appellant, *v.* Concepción Pérez Valdivieso et al., Defendants and Appellees.

No. 12359. Decided November 21, 1961.

*Francisco Espinosa, Jr., Acting Secretary of Justice, Arturo Estrella, Assistant Secretary of Justice, Edgar S. Belaval, Assistant Attorney General,* and *Juan Pedrosa, Jr., Assistant Attorney General,* for appellant. *Leopoldo Tormes, Raúl Matos,* and *Fernando H. Usera* for appellees.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo and Mr. Justice Dávila.

Per curiam.

The Commonwealth of Puerto Rico brought this action against Concepción, Jorge Lucas, and María Teresa Pérez Valdivieso and against Commonwealth Oil Refining Co., seeking to revendicate a certain property of 560.96 cuerdas [1] which is allegedly in the possession of the defendants, as part of a certain property of 4,518 cuerdas known as "Dolores" which the latter own in the municipalities of Peñuelas

---

[1] This area was based on the description contained in the Proclamation of Governor Yager in 1918, but according to the 1950 plan the area is 487.43 cuerdas.

and Guayanilla. The Commonwealth Oil Refining was joined as a defendant by reason of its having acquired through a sales contract part of the property sought to be revendicated.

The ownership of the property object of this action is recorded in favor of the Commonwealth in the Registry of Property of Ponce at folio 39, volume 23 of Guayanilla, property No. 1015, the description of which is as follows:

"Rural: Tract of mangrove and nitrous land known as Manglar del Puerto and Ensenada, situated in the ward of Playa of the municipal district of Guayanilla, having an area of two hundred twenty hectares, forty-seven ares, and eighty-six centiares, equivalent to five hundred sixty and ninety-six hundredths cuerdas. It is bounded on the north by lands belonging to Lucas P. Valdivieso; on the east by the same lands of Lucas P. Valdivieso, the Caño de los Negros and the sea; and on the south and west by the sea."

The plaintiff alleges that its recorded title stems from continuous acts of possession and dominion performed since time immemorial by it and its predecessor in title, the Spanish Crown, but that for some years defendants Pérez Valdivieso have claimed the ownership of the said property and interrupted the plaintiff in its possession, alleging that the said property is part of the "Dolores," which according to the plaintiff "is bounded on the south and west by the sea and the Port of Guayanilla, and is recorded at folio 143, volume 55 of Peñuelas, property No. 2109." The plaintiff alleges that, notwithstanding the fact that the "Dolores" is bounded on the south and west by the sea and the Port of Guayanilla, the said property does not comprise the lands herein sought to be revendicated. The plaintiff further alleges that those lands "consist of mangrove and nitrous lands which form an integral part of the maritime zone, and that before they were partly filled they were entirely covered by the sea during high tides, which at times rose to the very southern and western boundaries of the said property 'Dolores.'"

The plaintiff prays for judgment containing the following pronouncements:

"1.—Declaring that the Commonwealth of Puerto Rico is the sole owner in fee simple of the property described in the first paragraph of this complaint.

"2.—Annulling any record of the said property or part thereof appearing in the Registry of Property in favor of the defendants.

"3.—Adjudicating to the plaintiff the full possession of the said entire property.

"4.—Ordering that there be corrected in the Registry of Property the description of the property known as 'Dolores,' setting forth that the limit of such property on the western and southern boundaries is the line reached by the sea during high tides.

"5.—Affording to the plaintiff any other relief to which it may be entitled pursuant to law and the facts hereinabove set out."

After a trial was held and an inspection conducted, the trial court dismissed the complaint and imposed attorney's fees at $5,000 on the State.

In dismissing the complaint, the trial court made the following findings of fact:

"3. That when the change of sovereignty took place in this Island some time in 1898, and when the Treaty of Paris was signed on April 11, 1899, as well as when the Civil Code took effect on July 1, 1902, and until her death in 1917, Dolores Rodríguez Hurtado, predecessor in title of Lucas P. Valdivieso, predecessor in interest of the defendants surnamed Pérez Valdivieso and Alvarado, owned the lands comprised in the property Dolores situated in the wards of Tallaboa Poniente and Tallaboa Saliente of the municipal district of Peñuelas (Exh. 6 of the defendants), whose southern boundary extended from the point which divides the boundary of Micaela Torruella along the entire water front in a westerly direction as far as the place of Puntilla fronting the Port of Guayanilla; and on the west the boundary of Guillermo Tirado along that of Pedro Villoch, former owner of Hacienda Buena Vista (Exh. 9 of the defendants), as far as the place Puntilla referred to,

by virtue of dominion title which is duly recorded in the Registry of Property of Ponce.

"5.—That no part of the lands comprised in Dolores property owned by the defendants comprises at present, nor has comprised on any prior occasion, any land forming part of or which has been segregated from the property owned by the plaintiff known as Manglar del Puerto and Ensenada, situated in the ward of Playa of the municipality of Guayanilla (Exh. A of the plaintiff), as alleged in the first averment of the complaint, there being a distance of some two kilometers between the place of Puntilla of the ward of Tallaboa Poniente of Peñuelas and the place of La Playa and Port of Guayanilla, as it appears from the inspection of the land made by the court.

"6. That the lands situated on the southern side of Dolores property and which abuts on the Antilles Sea, as it appears from the observation made by the court and from the testimonies of witnesses José Rosario Gelpí, Rafael Rivera Esbri, and Guillermo Vivas Valdivieso, and from what the court was able to observe during its inspection, were not flooded by the sea nor are they washed by the flow and ebb of the sea at the places affected by the tides and higher waves in stormy weather. On those lands there is grass for grazing cattle, sea grapes, and other kinds of trees. There were also scattered mangrove trees on the southern as well as on the western boundary, but they are not unclaimed or unused lands, nor can they be considered as woodland or mangroves belonging to the Commonwealth.

"8. That when the Treaty of Paris was signed on April 11, 1899, which brought to an end the war between Spain and the United States, the Spanish Crown was not in possession nor was the owner of any of the lands comprised at that time in Dolores property, and, on the contrary, the owners and possessors of those lands were then and had been for many years prior to July 1880, the Sociedad Valdivieso Hermanos and Dolores Rodríguez Hurtado by virtue of titles recorded in the Registry of Property, wherefore the Spanish Crown could not cede nor transfer any part of those lands to the United States of North America, except such as could be considered as lying in the maritime zone at the points where the said Dolores property abutted on the sea and as determined by law, nor could the

Government of the United States of America cede any part of those lands to The People of Puerto Rico.

"12. That it has not been established that the acts of dominion allegedly performed by the plaintiff in connection with certain lands have involved the lands comprised in Hacienda Dolores prior to the change of sovereignty in this Island, or those comprised at present therein, since none of the witnesses for the plaintiff identified properly the lands in question, and it appears from the evidence that there are other places known as Puntilla which are adjacent to the Bay or Port of Guayanilla where the property which The People of Puerto Rico seeks to revendicate is situated, as distinguished from the lands comprised in Dolores property owned by the defendants which have always been situated in the municipality of Peñuelas.

"13. That the plaintiff has failed to establish that the defendants or any of them, nor their predecessors in title, have wrongfully occupied at any time prior to the change of sovereignty in this Island, nor subsequent thereto, any land belonging to the Spanish Crown at the time the Treaty of Paris was signed (April 11, 1899), nor that they belong at present to the plaintiff.

"15. That codefendant Commonwealth Oil Refining Co., Inc. is a third-party mortgagee by reason of it having acquired the tenements it owns from those in whose favor they were recorded in the Registry of Property of the municipality, and whose titles to the lands it owns and which were comprised in Dolores property are duly recorded in the Registry of Property of Ponce."

Are these findings of fact supported by the evidence which the trial court had under consideration? Let us examine the evidence.

The evidence for the Commonwealth consisted of:

(1) Documentary evidence. Of this the most important is:

(a) Certificate of the Registrar of Property of Ponce attesting to the fact that the ownership of the property sought to be revendicated was recorded in January 1920 in favor of the State.

(b) A proclamation of Governor Yager of May 28, 1918, regarding as property of the Government all the mangrove land along the coast of Puerto Rico, describing the mangroves of the Port of Guayanilla as having an area of 560.96 cuerdas as follows:

"Mangrove at the harbor and bay. Boundaries: N., property of Lucas P. Valdivieso; E., the same property of Lucas P. Valdivieso; Caño de los Negros and the sea; S. and W., the sea."

(c) Plan set up in 1950, following the general lines of another set up in 1918, both of which were prepared by the Department of Public Works, in which it appears that the land in litigation has an area of 487.43 cuerdas, consisting mostly of mangrove and nitrous land.

(2) Oral evidence. The following is an analysis of the latter:

JOSÉ MANUEL GÓMEZ. He is an engineer specialized in survey and topography, author of the plan drawn up by Public Works in 1950. He testified that he was commissioned to survey a certain property of the State situated south of Dolores property, owned by the Heirs of Valdivieso, in the wards of Encarnación of Peñuelas and Playa, formerly of *Guayanilla*. When the judge asked him, "Ward of Encarnación?", he answered, "Yes, sir, formerly, and Playa; at present those wards are called Tallaboa Poniente and Saliente." He identified the plan set up by him as comprising the Government lands situated in the Port and Ensenada de la Puntilla of *Guayanilla*. He said that when he inspected the lands in the company of Bengoa (Valdivieso's agent) he did not have an exact idea of the situation of the lands nor of their boundaries. He identified the lands as being mostly mangrove, swamps, alluvion, lands geologically in process of formation; that there was an interior lagoon and that that place has been drying up; there are nitrous lands there; some portions are high, others low; there are whole

mangroves where the tide flows and ebbs.  In answer to a question as to the measure of the flow and ebb of the tide between high and low tide, he said that that survey was precisely carried out on the basis of a study made by the U.S. Coast, U. S. Survey, in the Port of *Guayanilla*, and that the average is 1 foot and 4 inches, that that is the line shown on the plan as the limit of the mangrove land.  He pointed out that the lands in litigation are only one third of the lands; the rest is mangrove and is part of the Port; one goes in and the water flows; one sees the water.  In answer to a question as to whether he had observed personally how high the tide rises at the highest point of those lands, Gómez said that that was the line marked on the land for fixing the limit of those mangroves.  He said that the line marked along the whole length of the boundary was determined on an observation of the water when the tide rises to the highest point; a mark was then placed and those were the points taken as basis; and that that average line of the high tide is precisely the limit of the mangroves and of the maritime zone.  He identified the 1918 and 1950 plans and said that they agree in their general lines, but points out that there is a slight difference in area, one of which is 487 and the other 537 cuerdas.  Gómez further testified that there are inside some 300 cuerdas of mangrove land.

OSCAR RIVERA TORRES.  Was for some 24 years an employee of the Forest Service.  His work consisted in patrolling the forests and mangroves in Guayanilla and Peñuelas.  He patrolled in *Guayanilla* the place known as *Puntilla*.

JOSÉ A. GILORMINI.  He is an engineer specialized in agronomy and forestry (study of forests) and is in charge of the forests and mangroves.  He has worked there since 1931.  The Puntilla is located by the side of Playa de *Guayanilla*.  The Puntilla lands are nitrous, which they consider as mangrove land.  He does not know the boundaries of "Dolores" property.

LUDOVICO MATTEI. He has been concerned with Puntilla of *Guayanilla*. Many years ago he leased those mangroves from the Government for the purpose of making charcoal. No one interfered with him during the time he cut wood under the contract. He is now a port captain and is in charge of the public lands in the Playa de *Guayanilla*. He is in charge of 67 cuerdas.

GERMÁN ORTIZ RODRÍGUEZ. He has been forester of the Forest Service since 1942, and has charge of the mangroves of Puntilla of *Guayanilla*. He has never had any reason to denounce anyone in Puntilla. He has never seen cattle on those lands.

The evidence of the defendants consisted of:

(1) Documentary evidence.

(a) Certified copy of the Registry records of a certain property No. 24 which is described as having an area of 3,550 cuerdas, formed by the consolidation of other properties acquired between 1862 and 1879. This consolidation was recorded in 1880, and in turn became a part of property No. 534 together with other properties acquired during the period between 1885 and 1891, having at that time an area of 4,518 cuerdas and which was recorded in 1898. Property No. 534 in turn became a part of other property of 5,811 cuerdas. There appear of record Registry certifications of these operations and also of some of the properties which were part of those consolidations.

(b) Deed of protocolization and document of approval on division of inheritance executed by the Valdiviesos in 1897, in which the Dolores property having an area of 4,518 cuerdas was included as part of the hereditary estate.

(2) Oral evidence. The following is an analysis thereof:

NATALIO TORRES. Is 80 years old. Has always lived in Tallaboa Saliente and Poniente of the ward of Encarnación. Since he was a child he used to go to the Hacienda and knew that it belonged to Valdivieso and Dolores Rodrí-

guez. They had mules and horses there. He worked in "Dolores" property as overseer from 1906 to 1939. There were only some mangrove trees along the seashore. Those were not marshy, they were good for walking. He never saw on those lands any employee or officer of the Spanish Government. The *Puntilla belongs to Peñuelas and not to Guayanilla.* The police patrolled the coast.

FLORENTINO RODRÍGUEZ. Is 68 years old. Tallaboa Poniente extends as far as "Dolores" and up to Puntilla. As a child he used to work in "Dolores" and always knew Valdivieso and Dolores to be the owners. The Puntilla lands were grazed for pasture; there were several cuerdas of sugar cane; there was cattle. That land is dry, it is not swampy, and there are mangroves only on the shore. There was a government employee who patrolled the seashore and did not permit anyone to cut down mangrove trees in that place. The government foresters were not seen inside the Hacienda, only on the shore. They never denounced anyone who was working in Puntilla and caring for cattle.

NEMESIO ARROYO DÍAZ. Is 80 years old. When the Americans arrived the owners of "Dolores" were the Valdiviesos. The property is bounded on the south by the seashore. He knows it for a fact because his uncle was the pasture watchman and he made the rounds along the seashore. The lands were devoted to grazing oxen, donkeys, and mules. Absolutely no one other than the Valdiviesos have performed acts as owners of the lands. The boundary between Guayanilla and Peñuelas is quite far from Puntilla. The "Dolores" is bounded by the seashore. There are small mangrove trees scattered along the shore; there were no mountains; the land is not marsh.

RAFAEL RIVERA ESBRI. He is 75 years old. The "Dolores" is situated in *Peñuelas.* Since he was a child he used to go hunting to "Dolores." In order to enter it was necessary to ask the Valdiviesos for permission. The Puntilla is

situated in *Peñuelas*. It is bounded on the south by the sea. In Puntilla the lands have always been devoted to the raising of mules, donkeys, planting coconut, etc. There is mangrove on the shore. At the time of the San Ciriaco hurricane and after the American occupation, the Valdiviesos were already in possession of those lands. Mangroves no longer grow 20 meters from the ocean. The Peñón is the boundary line between the jurisdiction of Ponce and Peñuelas and the Valdivieso property extends that far. Many times horses were trained there for the race track; we asked for permission to train our horses; it is *dry sandy ground* in times of drought where horses run perfectly.

GUILLERMO VIVAS VALDIVIESO. He is 74 years old. "Dolores" is situated in *Peñuelas*. Since he was nine years old he used to go horse riding on natural pastures. The Antilles Sea is south of Hacienda Dolores. At the Puntilla the pastures are natural; cattle, mules, etc., grazed there. Neither at that time nor during the time I was administrator, no one could enter there without permission. The Valdiviesos held the possession of all that property. A portion of the María (one of the properties comprised in Hacienda Dolores) is called Puntilla. There are mangroves on the seashore. There are no mangroves on the portion of the Puntilla where we went horse riding. The Puntilla has never been filled.

JOSÉ ROSARIO GELPÍ. Was born in Peñuelas in 1877. Since he was a child he used to come to Tallaboa to hunt in Hacienda Dolores which is situated in *Peñuelas*, and it was necessary to ask the Valdiviesos for permission. Before the arrival of the Americans, the Valdiviesos were already there as owners. The property was bounded on the south by the sea. Goats were raised there, there was cattle; it was used for training colts and horses. In 1898 the Puntilla was there and was part of the land of Hacienda Dolores. *That the Puntilla does not belong to Guayanilla.* All those lands were flat. That the tide there is low. The Puntilla was

bounded on the south by the sea. La Puntilla is situated in *Peñuelas*. There was cattle there before and after the American occupation. That neither the Spanish Government, nor the United States, nor our present Government has ever claimed ownership.

Upon examination by plaintiff's attorney, Rosario Gelpí testified:

"Plaintiff: And the Puntilla, do you know what is the Puntilla?

"Witness: How were the Two Puntillas which were there?"

"Plaintiff: That is, were there Two Puntillas there?

"Witness: *Yes.*

"Plaintiff: Which are they?

"Witness: One which is situated in Hacienda Dolores and another which is situated where the Texaco is located, and it has a point which extends into the sea where the Texas pier is located.

"Plaintiff: And where are those Two Puntillas located, on which property originally?

"Witness: *One was on lands of Guayanilla,* in the Bay of Guayanilla, the one on the right, *and the one on the left which extends farther into the sea and which was flatter was on Hacienda Dolores.*

"Plaintiff: Then there is one Puntilla on the Guayanilla side.

"Witness: Yes, it is seen there.

"Plaintiff: Is it in Guayanilla?

"Witness: It is in the jurisdiction of Guayanilla.

"Plaintiff: *Is that Puntilla of the jurisdiction of Guayanilla part of Dolores?*

"Witness: *No, it is not part of Dolores; what is part of Dolores is the deepest Puntilla where the mains are now and where the Commonwealth pier is situated.*

"Plaintiff: And is that where you used to go hunting?

"Witness: I went hunting to the two places because we entered one as well as the other, but *no permission was needed for the mangrove portion.* But at that time the Bay of Guayanilla consisted mostly of mangroves, while on the Peñuelas side the sea is more calm and the lands were flatter. Here you have to go to Peñoncillo and to the left, in the direction

of Mayagüez, you see that Puntilla which abuts on the sea. Puntilla is a point of land which extends into the sea.

"Plaintiff: But which one is generally known as the Puntilla?

"Witness: They also called it the Puntilla. What happens is that *the one to the right was in the jurisdiction of Guayanilla and the other in Hacienda Dolores.*

"Plaintiff: You say that the one to the right was in Guayanilla?

"Witness: Yes, looking, of course, in the direction of the ocean, that is, the one farther to the west where the Texas Company is located. A railway has been constructed there and a road leading to it has been opened, and the piers are also there. That is also a *puntilla.*

"Plaintiff: *Is that the Puntilla of Guayanilla?*

"Witness: The *Puntilla of Guayanilla.*

"Plaintiff: Where the Texas is?

"Witness: Yes, sir.

"Plaintiff: Is that where you used to go hunting?

"Witness: And to the other one.

"Plaintiff: You went there hunting and asked no one for permission?

"Witness: No one.

"Plaintiff: Did it not belong to any one?

"Witness: *I say that it belonged to Guayanilla, but there was no government there. The one on the other side was governed by the Valdivieso brothers and their employees.*

"Plaintiff: You say that in that Puntilla, where the Texas is located, there was much mangrove there?

"Witness: Yes, sir, there was much mangrove.

"Plaintiff: Is there no mangrove there?

"Witness: No, mangrove always grows in the seashore around there." [Italics ours.]

He further testified that there is no mangrove in the Puntilla de Tallaboa, in the Puntilla of the Valdiviesos. The lands where the Commonwealth now stands were flat and were filled in order *to level them.* They were not swampy, they were solid. The trouble is that they are not solid enough for big structures.

JACINTO ROQUE RIVERA BRUN. Was born in Tallaboa Poniente in 1878. The "Dolores" property is situated in Tallaboa, and the ward of Tallaboa is known as Encarnación. That there was an overseer who made the rounds of the property. That there were mules on the property and that the plantations in Puntilla extended as far as the sea. When the Americans arrived Dolores Rodríguez owned the "Dolores." That in 1887 (the Componte) the lands of the "Dolores" belonged to the Valdiviesos. That there were mangroves on the shore, but not on the property. The tide does not rise much and the land is flat. That when the tide rises it does not enter the inland, only the seashore, and that it never floods the property. That the lands are always dry and are not swampy. That with respect to the *húcar* (the boundary line between the municipalities of Peñuelas and Guayanilla), the "Dolores" is on this side (east) and Guayanilla on the other side (west).

The evidence was therefore most conflicting. While the plaintiff seeks to prove that the lands object of the revendicatory action were mostly mangrove and nitrous, the witnesses for the defendants testify that the lands on the southern part of "Dolores" are and have always been otherwise, that they are devoted to grazing and agriculture, that they are solid, that there are only a few mangroves in this area on the seashore. The magistrate himself, as it appears from the findings of fact, found in his inspection that the lands are solid for the most part. The witnesses for the defense describe the Valdivieso lands as lands which have been exploited in all phases of agriculture, and, on the other hand, the State seeks to establish that the lands were unused and that the only persons who entered them were the foresters and persons having special permission. Such conflict may be explained by the testimony of witness Gelpí who testified that there are *two* Puntillas, one in *Peñuelas* of which "Dolores" is a part, and another in *Guayanilla*, which belongs

to the State. In this connection, the witnesses for the plaintiff testified that the property object of their testimony is situated in *Guayanilla*, and the witnesses for the defendant insist that "Dolores" is situated in *Peñuelas*.

Despite the fact that the State in its original complaint admitted that "Dolores" is bounded on the south by the sea, it insisted afterwards that such boundary was not correct because when the six portions which were originally part of the "Dolores" property of 3,550 cuerdas were consolidated, four of those portions were not bound on the south by the sea and that the Valdiviesos altered the boundaries when they consolidated their properties. The evidence does not support such argument because the two remaining properties which were consolidated to form another property with a larger area were bounded on the south by the sea and their area was short of 3,000 cuerdas of land. Thus, the explanation given by the Valdiviesos that the entire southern boundary of the consolidated property is the Antilles Sea seems wholly plausible. We have already seen that several of the witnesses for the defense identified the southern boundary of Hacienda Dolores as being the sea, and the trial judge gave their testimony full credit.

We have examined closely the deeds which reveal the acquisitive history of the defendants with respect to the "Dolores" property, which acquisitions were made in the most part in the past century, and we find no conflict to warrant a finding that the boundaries were altered. Evidently, the trial judge did not give credit to the only testimony offered by the State which, if believed, would have established the right to the lands in litigation. We refer to the testimony of engineer Gómez, who set up the 1950 plan. This witness testified that in order to draw up that plan he followed the lines which represented the highest tides, and that that was the line which was marked on the land for the purpose of fixing the limit of the mangroves. However, the evidence

introduced by the defendants, testimonies of numerous witnesses who were acquainted with the entire zone since the past century, controverts that testimony. We have seen that they testify that the land is solid, that there are no mangroves, and according to the presiding judge, the inspection discloses that the latter statements are true.

■ An examination of the record reveals that while the witnesses for the plaintiffs knew nothing of the boundaries of the property in litigation, the defendants on the other hand established properly the boundaries of the property. And there are numerous decisions of this Court to the effect that the plaintiff as part of his *onus probandi* is bound to establish properly the identity of the property sought to be revendicated. *Velázquez* v. *Velázquez*, 82 P.R.R. 600 (1961); *Arce* v. *Díaz*, 77 P.R.R. 589 (1954); *Heirs of Meléndez* v. *Almodóvar*, 70 P.R.R. 500 (1949); *Sevilla* v. *Cía. Azucarera del Toa*, 69 P.R.R. 231 (1948); *Torres* v. *Capital of Puerto Rico*, 54 P.R.R. 340 (1939); *Pérez* v. *Gerena*, 41 P.R.R. 106 (1930); *Del Rosario* v. *Pizá*, 32 P.R.R. 290 (1923); *Matienzo* v. *Cancio*, 23 P.R.R. 250 (1915); *Siragusa* v. *People*, 18 P.R.R. 579 (1912); *Martínez* v. *Delgado*, 18 P.R.R. 373 (1911); *Morales* v. *Landrau*, 15 P.R.R. 761 (1909); *Mourriño* v. *Carreras*, 2 S.P.R. 581 (1902).

■ The trial court did not therefore err in dismissing the complaint interposed in the instant case.

It did err, however, in imposing attorney's fees on the Commonwealth. We have held time and again that attorney's fees should not be imposed on the State. *Heirs of Arroyo* v. *Municipality*, 81 P.R.R. 425 (1959); *Martínez & Márquez* v. *Sancho, Treasurer*, 76 P.R.R. 857 (1954); *People* v. *García*, 66 P.R.R. 478 (1946). The imposition of costs must be authorized by law, and there is no statute in this jurisdiction authorizing the imposition of costs against the State. *Heirs of Arroyo* v. *Municipality, supra*. We find no justification for the trial court's theory that the above

rule is applicable when the State is the defendant, but not when it brings the action. *Ocasio* v. *People*, 79 P.R.R. 27 (1956), does not militate against the foregoing. In that case the question was not the object of consideration and it was in passing that we ratified that The People is liable for costs and attorney's fees.

In view of the foregoing, the judgment appealed from is modified eliminating therefrom the imposition of attorney's fees, and, as thus modified, it will be affirmed.